*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 30, 2019

**By ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Gordon Freedman*, 18 Cr. 217 (KMW)

Dear Judge Wood:

    Trial in the above-captioned matter is scheduled to begin on November 4, 2019. Earlier today, the defendant submitted a request that the Court employ a written jury questionnaire in conducting *voir dire* in this matter; the defendant also submitted a proposed questionnaire (the "Proposed Questionnaire"), which is more than forty pages long and includes more than eighty questions, covering a wide variety of subjects. The defendant proposes having three hundred jurors complete the Proposed Questionnaire one week before trial. The defendant then proposes that the Court question any potential jurors about whom there are disputes as to dismissal for cause, after which the parties exercise their peremptory challenges, such that the list of jurors and alternates to be seated is finalized on the Thursday before the trial is to begin. The Government write in opposition to the defendant's request that the Court employ a written jury questionnaire. For the reasons set forth below, the use of such a questionnaire in this case is both inefficient and unnecessary.

    "*Voir dire* helps the trial court and the parties identify those persons who, for various reasons, cannot evaluate the evidence impartially or follow the court's legal instructions." *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007) (citing *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)). "[I]t has long been the rule that 'judges have been accorded ample discretion in determining how best to conduct the *voir dire*[.]'" *Quinones*, 511 F.3d at 299 (quoting *Rosales-Lopez*, 451 U.S. at 189).

    The Second Circuit has noted that this discretion necessarily involves crafting, and, as appropriate, limiting the questions to be posed to potential jurors, even where counsel may seek more extensive questioning:

> [F]ederal trial judges are not required to ask every question that counsel—even all counsel—believes is appropriate. Court and counsel have somewhat different goals in voir dire. The court wants

> a fair and impartial jury to be chosen and to move expeditiously to the presentation of evidence. Counsel want a jury favorable to their cause—fair or not –and voir dire aids them in exercising peremptory challenges and challenges for cause. Counsel have an additional purpose in voir dire moreover and that involves exposing jurors to various arguments they intend to make at trial. Counsel view voir dire as an opportunity for advocacy similar to, albeit not the equivalent of, openings or summations. This additional purpose has led to a long struggle between bench and bar…in which the bar has sought the right to question jurors at great length. Thus far, federal courts have successfully resisted such attempts.

*United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002); *see also United States v. Tomero*, 486 F. Supp. 2d 320, 324-25 (S.D.N.Y. 2007) (rejecting the defendant's request for use of a jury questionnaire in "the event an anonymous jury is empaneled" because the court deemed a written questionnaire "unnecessary" in light of the fact that the defense would have "'ample opportunity to suggest areas of inquiry for voir dire" such that they "'should have no problem in assessing the possible bias of prospective jurors.'") (quoting *United States v. Scala*, 405 F. Supp. 2d 450, 454 (S.D.N.Y. 2005).

Courts in this district have, typically, utilized written questionnaires in cases in which a large number of prospective jurors might need to be screened, whether because of the difficult or high-profile nature of the case, *see, e.g.*, *United States v. Rahaman*, 189 F.3d 88, 121-22 (2d Cir. 1999) (discussing the use of a written jury questionnaire in the trial of individuals charged with, among other things, providing support to the individuals responsible for the 1993 World Trade Center bombing), as a result of the decision to empanel an anonymous jury, *see e.g.*, *United States v. Thai*, 29 F.3d 785, 800-01 (2d Cir. 1994) (discussing the use of a written jury questionnaire in selecting an anonymous jury as a result of, among other things, two defendants having threatened and killed a civilian witness), in cases involving extensive pre-trial publicity, *see, e.g., United States v. Stewart*, 433 F.3d 273, 303-04 (2d Cir. 2006) (discussing the use of a written jury questionnaire in the criminal trial of Martha Stewart), and in capital cases, *see, e.g.*, *Quinones*, 511 F.3d at 299-300 (discussing the use of a written jury questionnaire in a case in jurors were asked to deliberate, following a penalty phase, as to whether or not to impose the death penalty). *See Quinones*, 511 F.3d at 299 (discussing precedents for the use of written questionnaires). Indeed, for the most part, the cases cited by the defendant involved domestic terrorism and trials that generated intense media interest. *See* Def. Ltr. at 3-5.

The trial of the defendant simply does not present the complex issues posed by jury selection in the cases in which courts in this district have taken the exceptional step of employing a written jury questionnaire. The evidence presented to the jury at trial will relate to the payment of kickbacks by Insys Therapeutics, Inc. ("Insys") in exchange for the defendant prescribing Subsys, a sublingual fentanyl spray. None of this subject matter is so inherently inflammatory or unusual that it should necessitate screening an unusually large number of jurors. The defendant argues, primarily, that the potential for jurors to have "personal experience with opioid use, addiction, or even a fatality," necessitates the use of a written questionnaire. *See* Def. Ltr. at 2. But the mere fact that this case involves the abuse of opioids—the subject of numerous trials in

this district each year—does not require more extensive screening than in any of those other cases.  Indeed, a written jury questionnaire was not employed at the recent trial of Dr. Ernesto Lopez before the Honorable Denise Cote.  Dr. Lopez was accused of prescribing thousands of medically unnecessary prescriptions for oxycodone and Subsys – the same narcotic that is at-issue in this case.  *See United States v. Lopez*, 18 Cr. 006 (DC).  Of course, the Court can, and should, pose oral questions in conducting *voir dire* that will help to identify any jurors who may be biased as a result of personal experience, but there is nothing so unusual about the subject matter of the evidence presented here to render such oral questioning insufficient to ensure a fair and impartial jury.

The defendant also suggests that media coverage may bias the jury, such that a written questionnaire is needed.  *See* Def. Ltr. at 1-2.  While there has been some media coverage of this and other related cases – in particular, the trial of executives from Insys Therapeutics, Inc. that occurred in the United States District Court for the District of Massachusetts earlier this year – the volume of that coverage is a far cry from the level that necessitated the use of a written jury questionnaire in cases like *Stewart*, 433 F.3d at 303-04, and *Rahaman*, 189 F.3d at 121-22.  Indeed, recent media coverage of this case makes clear that while there is some media interest in this matter, the level of anticipated media coverage will not be out of the ordinary for a criminal trial in this District.  For example, the recent guilty plea of co-defendant Jeffrey Goldstein was covered in a legal trade journal predominantly read by attorneys and in a short article in Reuters, but did not otherwise receive any extensive media coverage.  Media coverage of the guilty pleas of the other co-defendants in this case has been similarly limited.  To the extent the defendant is instead suggesting that media coverage about opioid use in general would bias the jury, he has failed to articulate why that coverage would uniquely bias the jury in this case—as opposed to in any case involving opioid abuse—such that oral *voir dire* would be insufficient.  Indeed, it is notable that the defendant does not point to a single opioid-related case in which a written jury questionnaire was employed.

For the reasons set forth above, the use of the Proposed Questionnaire is unnecessary in this case and would serve only to add an inefficient and cumbersome layer to the jury selection process.  Instead, typical *voir dire* procedures, including detailed oral questioning of potential jurors, will best accomplish the goals of selecting "a fair and impartial jury" and "mov[ing] expeditiously to the presentation of evidence."  *See Lawes*, 292 F.3d at 128; *Tomero*, 486 F. Supp. 2d 320, 324-25.  Accordingly, the defendant's motion for the use of a written jury questionnaire should be denied.  The Government intends to submit proposed *voir dire*, in

consultation with defense counsel, on October 21, 2019, as directed by the Court in its September 27, 2019 Order.

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney

by:     /s/
                                        Katherine Reilly
                                        Noah Solowiejczyk
                                        David Abramowicz
                                        Assistant United States Attorneys
                                        (212) 637-6521/2473/6525

cc:     Samuel Braverman, Esq. (by ECF)